1
2
3
4
5
6
7
8
9
10
11
12
13
14

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

MICHAEL ALAN MESSICK,          )
                               )
              Petitioner,      )          3:08-cv-0066-RCJ-VPC
                               )
vs.                            )          **ORDER**
                               )
E.K. MCDANIEL, *et al.*,        )
                               )
              Respondents.     )
_____/

15       Before the Court is the petitioner's Second Amended Petition and the answer and

16  reply thereto.   Also pending is petitioner's motion for leave to filed excess pages (ECF No. 58) and

17  respondents' motion to strike the reply (ECF No. 60).  The motion for leave to file excess pages shall

18  be granted and the motion to strike shall be denied.  The court's determination of the merits of the

19  claims raised in the Second Amended Petition follows.

20  **I.      Procedural History**

21       Following a consolidated jury trial, petitioner was convicted in Clark County, Nevada

22  on June 26, 2003, of first degree murder with the use of a deadly weapon for the killing of his

23  mother, Hisayo Miller (Case No. C175861), and second degree murder for the killing of his

24  girlfriend, Anne Suazo (Case No. C182306).  Exhibit 85 and 86.[1]   He was sentenced to life without

25

26          [1] The exhibits referenced herein were filed by petitioner in support of his Petition for Writ of
    Habeas Corpus and are located in the court's docket at entry Nos. 19-26.

1   the possibility of parole with an equal consecutive term for the use of the deadly weapon in case

2   C175861, and to life with the possibility of parole after ten years in case C182306 to be served

3   consecutive to the first degree murder sentences.

4             Following the conviction, petitioner filed a timely appeal.  Exhibit 87.  He raised four

5   grounds for relief.  Exhibit 89.  The Nevada Supreme Court affirmed the conviction on February 3,

6   2005.  Exhibit 92.

7             Petitioner moved back to trial court on a petition for writ of habeas corpus, post-

8   conviction, raising multiple claims of ineffective assistance of counsel, prosecutorial misconduct and

9   judicial misconduct or bias.  Exhibit 96.  Following a hearing and supplemental briefing on a single

10   issue, the court entered its order denying the petition.  Exhibit 125.  The Nevada Supreme Court

11   upheld the lower court's decision on appeal.  Exhibit 128.

12             Petitioner arrived at this court with a petition for writ of habeas corpus pursuant to 28

13   U.S.C. § 2254 on April 11, 2008.  Counsel was appointed to assist the petitioner and a First

14   Amended Petition was filed July 18, 2008 (docket #8).  After the issue of the statute of limitations

15   was raised with a anticipatory request for tolling, a second amended petition was filed on April 8,

16   2009 (ECF No. 17).   Thereafter, respondents filed a motion to dismiss the petition (ECF No. 35) on

17   the basis of exhaustion as to Grounds One and Five (E).   As a result of that motion Ground One was

18   dismissed as unexhausted and procedurally barred (ECF No. 47).

19             Respondents have filed their Answer (ECF No 51) and petitioner his Reply (ECF No.

20   57).  The court has reviewed the proposed Reply and finds that the Motion to File Excess Pages shall

21   be granted.  Because the Reply does not improperly expand the facts pled in the Second Amended

22   Petition, the Motion to Strike (ECF No. 60) shall be denied.

23   **II.**      **Discussion**

24          **A.**     **Legal Standard**

25             28 U.S.C. §2254(d), a provision of the Antiterrorism and Effective Death Penalty Act

26

(AEDPA), provides the standards of review that this Court applies to the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. §2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 1173 (2003) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 149 (2000), and *citing Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843 (2002).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. §2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. at 74, 123 S.Ct. at 1174 (*quoting Williams*, 529 U.S. at 413, 120 S.Ct. 1495). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id*. (*quoting Williams*, 529 U.S. at 409, 120 S.Ct. 1495).

**B.      Analysis**

3

Ground Two

> It was an abuse of discretion for the trial court to summarily deny appellant access to the N.C.I.C. index on Phillip Done when the State could not confirm the existence or non-existence of an informant file and there was no other source available to appellant.  As a result, Messick was denied his Fifth, Eighth and Fourteenth Amendment right to due process, equal protection and a reliable sentence due to the State's failure to disclose exculpatory evidence.

During pre-trial proceedings, petitioner moved for discovery related to the background and confidential informant history of Phillip Done, an inmate with petitioner at the Clark County Detention Center who was scheduled to testify at trial as to incriminating statements petitioner had made to him.  Exhibit 44.  Initially, petitioner sought records from the Nevada Department of Parole and Probation and for the district attorney's Informant Files on Done.  *Id.*  The district attorney denied the existence of any Informant Files and the court declined to order the release of Parole and Probation records.  Exhibit 47, p. 2.  Moreover, the prosecutor informed the court that he had conferred with the probation officer, whose affidavit indicated that Done had acted as an informant in another instance, and confirmed that there was no information that Done had actually testified at any trial in that matter or in any other.  *Id.* at pp. 3-4. Petitioner was unable to provide any specifics to the court or to the prosecutor as to when or where Done might have acted as an informant.  Neither was he able to tell the court what an N.C.I.C. report might reveal about Done that would be favorable or material to petitioner's case.  *Id.*  Now, petitioner argues that failure to obtain and review the N.C.I.C. report denied him the opportunity to properly and effectively cross-examine Done in order to impeach his credibility.

Petitioner relies on *Brady v. Maryland,* 373 U.S. 83 (1967), to support the proposition that the State was obligated to produce evidence, "which, had it been disclosed" would have produced a different outcome at trial.

Suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of

4

the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87.  There are three components of

a true *Brady* violation.  These include (1) the evidence at issue must be favorable to the accused,

either because it is exculpatory, or because it is impeaching; (2) the evidence must have been

suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued.

*Strickler v. Greene,*  527 U.S. 263, 281-282, 119 S.Ct. 1936,1948 (1999).

The Nevada Supreme Court reviewed and denied this claim for relief on direct appeal.

Exhibit 92, pp. 8-9.  The Nevada Supreme Court applied the *Brady* standard stating:

> Whether the State adequately disclosed information under
> *Brady* involves both factual and legal questions and requires a *de novo*
> review. [fn 9: *Mazzan v. Warden,* 116 Nev. 48, 66, 993 P.2d 25, 36
> (2000).]  *"Brady* and its progeny requires a prosecutor to disclose
> evidence favorable to the defense if the evidence is material either to
> guilt or to punishment." [fn 10: *Lay v. State,* 116 Nev. 1185, 1194, 14
> P.3d 1256, 1262 (2000).]  Failure to disclose the evidence violates due
> process regardless of the prosecutor's motive. [fn 11: *Id.*] In Nevada,
> when the defense makes a specific request, evidence is material if there
> is a reasonable possibility it would have affected the outcome of the
> trial. [fn 12: *Id.*]
>
> We conclude that the district court did not err by refusing to
> order the State to produce an NCIC report on Done.  Messick's oral
> request for the report failed to demonstrate that an NCIC report would
> contain the information sought, that the information would be
> favorable, or that it would be material to Messick's guilt or punishment.
> Further, Messick successfully impeached Done.  Therefore, Messick
> failed to show that an NCIC report would have contained information
> that had a reasonable probability of affecting the outcome of the trial.

*Id.*

Petitioner argues that the Nevada Supreme Court's denial of this claim involved an

incorrect standard of review because Nevada law in *Mazzan v. Warden,* 993 P.2d 25, 36 (Nev. 2000),

requires a reasonable <u>possibility</u> that the outcome would have been different had the information

been disclosed, where, in denying the claim the court law requires a reasonable <u>probability</u> of an

effect on the outcome.

Evidence is material and must be disclosed, "if there is a reasonable <u>probability</u> that,

had the evidence been disclosed to the defense, the result of the proceeding would have been

different." *Kyles v. Whitley,* 514 U.S. 419, 433-34 (1995) (emphasis added).  Therefore, while the Nevada Supreme Court cited to both Nevada and federal standards for reviewing this claim, the court's conclusion that "Messick failed to show that an NCIC report would have contained information that had a reasonable <u>probability</u> of affecting the outcome of the trial" was not an incorrect application of the clearly established federal standard for reviewing a *Brady* claim.

Next, petitioner argues that the Nevada Supreme Court made an unreasonable determination of facts in its conclusion that petitioner "successfully impeached Done," where a full report of the witness's criminal record would have allowed petitioner to completely undermine Done's credibility before the jury.  This Court, having reviewed the transcript of Done's testimony, cannot conclude that the Nevada Supreme Court's determination of these facts was objectively unreasonable.  The fact that Done has two felony convictions and that he had offered information to police in a previous situation was brought to the jury's attention.  Counsel was effective in questioning the witness about his recollection of the conversations, about his criminal history and other aspects of his past and about the potential motivation Done had for offering his testimony.  His suggestion that N.C.I.C. information would have allowed him "to completely undermine Done's credibility" is speculation without support. Petitioner is not entitled to relief on Ground Two of the Second Amended Petition.

<u>Ground Three</u>

The statutory reasonable doubt instruction is unconstitutional.  As a result, Messick's conviction and sentence are invalid under the federal constitutional guarantees of due process under the Fifth and Fourteenth Amendments to the United States Constitution.

Petitioner acknowledges that this claim is foreclosed by the Ninth Circuit's holdings in *Ramirez v. Hatcher,* 136 F.3d 1209, 1210-11 (9th Cir. 1998) and *Nevius v. Sumner,* 218 F.3d 940, 944-45 (9th Cir. 2000), which present precedential roadblocks to claims attacking the

1    constitutionality of Nevada's statutory reasonable doubt jury instruction.  He contends however, that

2    his wishes to preserve the claim for further review by a higher court.

3              Acknowledging petitioner's right and need to preserve his claims, the Court is bound

4    by the holdings of the Ninth Circuit and will, therefore, deny relief on the bases of the cases cited.

5              Ground Four

6              The trial court deprived Messick of his theory of defense by refusing to
                 give his proffered jury instruction on accessory after the fact.  As a
7                result, Messick's conviction and sentence are invalid under the federal
                 constitutional guarantees of due process and fundamental fairness under
8                the Fifth and Fourteenth Amendments to the United States Constitution.

9              Petitioner argues that he was entitled to have the jury instructed on a finding of

10   accessory after the fact based on petitioner's defense theory that he "was simply somebody who

11   followed along with the perpetrator of the crime upon Hisayo Miller, and also upon Annie Suazo."

12   Exhibit 78, pp. 92-94.  He requested the jury be instructed as follows:

13             Accessory after the Fact:
                 Every person who:
14                   (1) harbors, conceals or aids an offender;
                     (2) after the commission of a felony;
15                   (3) with the intent that the offender may avoid or escape from
                 arrest, trial, conviction or punishment; and
16                   (4) that person had knowledge at the time of such harboring,
                 concealing or aiding that the offender has committed a felony or was
17               liable to arrest is an accessory to the felony.
                     The mere finding that a person is an accessory to a felony is
18               insufficient to support a finding that the person is a principal.  A
                 mere accessory to the felony cannot be proceeded against nor
19               punished as the principal.

20   Exhibit 82, p. 2.

21             In requesting this instruction, petitioner argued to the court that there was evidence

22   presented which suggested that Danny Massey, a witness for the prosecution, had lied to police, had

23   motive to harm Ms. Miller and his whereabouts were unaccounted for during the time when Ms.

24   Miller was killed. Exhibit 78, p. 94. The trial court rejected the instruction finding that there was

25   insufficient evidence to justify its use.  Exhibit 78, pp. 92-94. In denying the claim on direct appeal,

26

7

1   the Nevada Supreme Court found that petitioner had not presented any evidence to support his

2   contention that he did not know about Miller's murder until after it occurred, making the trial court's

3   denial proper, citing to *Roberts v. State,* 102 Nev., 170, 172-73, 717 P.2d 1115, 1116 (1986) for the

4   rule of law and *Jackson v. State,* 117 Nev. 116, 120, 17 P.3d 998, 1000 (2001) for the proper

5   standard of review.  Exhibit 92, p. 9.

6           Under Nevada law, "the defense has the right to have the jury instructed on its theory

7   of the case as disclosed by the evidence, no matter how weak or incredible that evidence may be."

8   *Crawford v. State,* 121 Nev. 744, 751, 121 P.3d 582, 586 (2005); *Vallery v. State,* 118 Nev. 357,

9   372, 46 P.3d 76-77 (2002).  The Sixth and Fourteenth Amendments to the United States Constitution

10  guarantee criminal defendants "a meaningful opportunity to present a complete defense." *Crane v.*

11  *Kentucky,* 476 U.S. 683, 690, 106 S.Ct. 2141, 2146 (1986) quoting *California v. Trombetta,* 467

12  U.S. 479, 485, 104 S.Ct. 2528, 2532 (1984).  However, that does not necessarily require that the jury

13  receive instruction on a theory of defense which is not supported by evidence.  *Menendez v. Terhune,*

14  422 F.3d 1012, 1029 (9th Cir. 2005).  Moreover, no federal habeas relief can be obtained for a

15  purported error of state law.  *Estelle v. McGuire,* 502 U.S. 62, 72, 112 S.Ct. 475, (1991).  Here,

16  petitioner has not argued that he was denied the opportunity to put on witnesses or to fully cross-

17  examine state witnesses.  He does not argue that he was denied the right to testify or that he was

18  denied subpoena power to compel a witness's attendance.  Thus, the Nevada Supreme Court's denial

19  of relief from this claim, based as it was on state law, cannot be the basis for habeas corpus relief

20  under 28 U.S.C. § 2254, where there is no showing that the state court's decision was contrary to or

21  an objectively unreasonable application of clearly established federal law.  Ground Four must be

22  denied.

23          Ground Five

24          Messick was denied his right to effective assistance of trial counsel
            under the Sixth and Fourteenth Amendments to the United States
25          Constitution.

26

8

1    The surviving sub-parts of this claim include petitioner's assertion that his conviction

2 and sentence are invalid based upon the ineffective assistance of trial counsel where (C) counsel

3 failed to investigate, (D) counsel failed to object to improper police opinion testimony, and (E)

4 counsel failed to object to prosecutorial misconduct; (F) counsel failed to move to suppress evidence

5 seized form his home, which he shared with Hisayo Miller; (G) counsel failed to obtain messick's

6 consent to argue and then ineffectively argued in closing that petition was guilty of being an

7 accessory after the fact to Miller's murder; (H) counsel failed to offer expert testimony to refute

8 blood evidence; and (I) counsel failed to object to judicial bias.

9    In *Strickland v. Washington*, 466 U.S. 668 (1984), the Court established the standards

10 for measuring ineffective counsel.  The two prong test requires a petitioner claiming ineffective

11 assistance of counsel to demonstrate (1) that the defense attorney's representation "fell below an

12 objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced

13 the defendant such that "there is a reasonable probability that, but for counsel's unprofessional

14 errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 688, 694.

15    (C)    Counsel Failed to Investigate

16    Petitioner argues that counsel should have conducted an "independent and adequate

17 investigation in order to prepare for trial and properly advise his client."  Specifically, petitioner

18 contends that counsel failed to gather evidence which would suggest alternate reasons for Suazo's

19 disappearance including threats, runaway or suicide.   During the investigation that was done, the

20 defense was made aware that Suazo was involved in a sexual relationship with another man who told

21 the investigator that Suazo had received threatening phone calls on her cell phone.  Petitioner

22 contends that counsel failed to follow up on either the sexual relationship or the cell phone records.

23    Petitioner also argues that counsel failed to properly investigate statements made to

24 police by Suazo's daughter, Teresa Cheney, two weeks after petitioner was taken into custody

25 including the statement that Suazo had called her cell phone company instructing them to block

26

1  further incoming calls to Suazo's cell phone.  Petitioner believes this statement provided some

2  evidence that Suazo was still alive after the time petitioner had been arrested for her murder and that

3  counsel should have determined from the cell phone provider the source of the instruction.

4  Petitioner believes that counsel should have investigated Suazo's relationship with her children and

5  the fact that the children used or took advantage of her.

6           Counsel has "a duty to make reasonable investigations or to make a reasonable

7  decision that makes particular investigations unnecessary." *Strickland,* 466 U.S. at 691. More

8  specifically, "a particular decision not to investigate must be directly assessed for reasonableness in

9  all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.*  To

10  establish prejudice, petitioner must demonstrate that "there is a reasonable probability that, but for

11  counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694.

12  A reasonable probability is one "sufficient to undermine confidence in the outcome." *Id.*

13           While petitioner highlights the various avenues that he believes counsel failed to

14  investigate or failed to develop in the defense strategy, he has not demonstrated that such additional

15  investigation or alternate theory for Suazo's disappearance would have been sufficient to undermine

16  confidence in the outcome of the trial.  Specifically, petitioner has not suggested how these

17  alternative theories or additional investigation would have undercut the witness testimony that an

18  unresponsive, unmoving woman matching Suazo's description was seen sitting in petitioner's

19  vehicle with a white plastic bag over her head - a bag with red inside it (exhibit 76, pp. 100-01, 113)

20  or testimony that petitioner had been seen trying to load a black plastic bag full of "bad trash" in the

21  shape and size of a human body into a friends Suburban for disposal (*id.* at 125-127).  Neither does

22  he explain how additional investigation or alternative defense theories would have explained away

23  the testimony that Ms. Suazo's wallet with her driver's license was found later that same night in the

24  back of the Suburban inside a similar black plastic bag (*id*. pp. 127-129).

25           Petitioner has not demonstrated that the Nevada Supreme Court's determination of

26

1    this claim was inappropriate under 28 U.S.C. § 2254(d).

2                    (D) Counsel Failed to Object to Improper Police Opinion Testimony

3                    Petitioner avers that counsel was ineffective when he failed to object to testimony by

4    Crime Scene Analyst Perkins who opined that "in his experience, the nature of crime scenes that are

5    cleaned up, usually it's cleaned up by somebody that has an interest in that scene, for example,

6    somebody that lives there, or is a family member."  Exhibit 77, p. 153.  Petitioner avers that this

7    opinion was equivalent to stating that because the crime scene had been cleaned it was more likely

8    that petitioner, the victim's son, was the killer.  Petitioner offers no federal legal holding upon which

9    to base his claim that this testimony was improper.

10                    According to the trial transcript, Crime Scene Analyst Perkins had worked as a crime

11   scene analyst for fourteen years and he was present at the scene where Ms. Miller's body was

12   discovered in his capacity as a Crime Scene Analyst Supervisor with the Las Vegas Metropolitan

13   Police Department (exhibit 77, p. 109) and as a blood spatter analyst, following voir dire by defense

14   counsel*(id.* at 125-130).  During cross-examination, Perkins testified about footprints found on the

15   scene that had been transferred from a bleaches surface to other surfaces in the residence and offered

16   an observation based on his experience in crime scene analysis.  *Id.* at 153.  A statement of personal

17   experience or observation is not improper opinion testimony.  Moreover, it would have been difficult

18   for counsel to have objected to a response to his own questioning.  Instead, counsel merely redirected

19   the testimony to the issue of the footprints without emphasizing the unresponsive statement.  *Id.*

20                    Petitioner is not entitled to relief on this claim as he has not demonstrated that the

21   Nevada Supreme Court's decision was improper under § 2254(d), where the court apparently

22   considered the testimony to have come from a qualified expert.  Exhibit 128, p. 3, n. 6.

23                    (E)     Counsel Failed to Object to Prosecutorial Misconduct

24                    Petitioner contends that counsel was ineffective for failing to object to various

25   instances of prosecutorial misconduct including: (a) the prosecutor's argument regarding

26

                                                        11

1 premeditated murder; (b) the prosecutor's argument regarding Done's parole officer; (c) and, the

2 prosecutor's questioning of detective Mesinar.

3         Under the federal standard, prosecutorial misconduct that renders a trial

4 fundamentally unfair affects a defendant's right to due process of law. *See Sechrest v. Ignacio,* 549

5 F.3d 789, 807 (9th Cir.2008*); Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464 (1986).  A

6 prosecutor's misleading and inflammatory arguments may violate a defendant's due process right to

7 a fair trial. *Id*. at 181–82.  To determine if the conviction was the result of a denial of due process

8 because of the prosecutor's actions, the court must examine the entire proceedings.  *Hall v.*

9 *Whitley,* 935 F.2d 164, 165 (9th Cir. 1991) (per curiam) citing *Donnelly v. DeChristoforo,* 416 U.S.

10 637, 643, 94 S.Ct. 1868, 1871 (1974).

11         a.     *The Prosecutor's Arguments Regarding Premeditated Murder*

12         In closing arguments the prosecutor emphasized the killer's actions in

13 the committing the murder of Ms. Miller, describing with some detail the actions suggested by the

14 evidence and arguing that those actions were evidence that the killer had premeditated the killing.

15 *See* Exhibit 78, pp. 120 and 147.  Petitioner asserts that counsel should have objected to these

16 arguments.  The Nevada Supreme Court determined that the prosecutor properly argued that

17 petitioner's actions showed premeditation, noting the prosecution had a right to "comment on the

18 evidence and ask the jury to draw inferences from that evidence. . . ."  Exhibit 128, p. 3.  This

19 determination is not contrary to or a misapplication of clearly established federal law and petitioner

20 has not shown that he was prejudiced by counsel's failure to object to the argument.

21

22         b.     *The Prosecutor's Arguments Regarding Witness Done's Parole*
                *Officer*.

23

24         Petitioner also argues that counsel should have objected to the

prosecutor's attack on the credibility of a defense witness based upon that witness's purported

25 frustration at not getting Done's probation revoked.  The prosecutor argued:

26

1
2
3

> You have a probation officer who is clearly seething with anger because he didn't get Phillip Done's probation revoked five years ago, even though he admits that that sort of deal is not at all uncommon, not unusual in the slightest.  Someone who is still angry about it, and I suggest to you relishes an opportunity to say something nasty about Phillip Done.

4

Exhibit 78, p. 145.  Petitioner contends that this statement is an opinion of the prosecutor that the

5

witness was a liar.   A prosecutor's comments during closing argument as to the credibility of a

6

witness, if made in reference to the evidence presented at trial, are not improper and do not violate

7

due process.  *See e.g., U.S. v. Kuta,* 518 F.2d 947 (7th Cir. 1975); *U.S. v. Caporale,* 806 F.3d 1487

8

(11th Cir. 1986); *People v. Ward,* 36 Cal. 4th 186, 30 Cal. Rptr. 3d 464, 114 P. 3d 717 (2005), as

9

modified, (Sept. 7, 2005) and *cert denied,* 126 S.Ct. 1625 (2006).  Here, the prosecutor questioned

10

the witness about his feelings regarding Done's parole and his desire to have the parole revoked.

11

Thus, the comments of the prosecutor were drawn directly from the evidence and were not improper.

12

Counsel's failure to object to such comments was not ineffective performance.

13

                  c.        *The Prosecutor Improperly Questioned Detective Mesinar*.

14

           Finally, petitioner argues that counsel was ineffective for failing to

15

object to the prosecutor's questions of Detective Mesinar related to petitioner's behavior during

16

questioning. The detective was asked to describe petitioner's reactions and responses when he was

17

informed of his mother's death and when police attempted to question him in that regard. Petitioner

18

argues such questioning was calculated to appeal to the jury's passions or prejudice and was

19

improper.

20

           It is proper for the prosecution to elicit testimony relevant to the events and

21

circumstances related to a murder, including the reactions of the defendant when confronted with the

22

crime.  Such evidence is relevant to show consciousness of guilt and knowledge of the crime's

23

occurrence.  Article IV of the Rules of Evidence deals with the relevancy of evidence. Rules 401 and

24

402 establish the broad principle that relevant evidence—evidence that makes the existence of any

25

fact at issue more or less probable—is admissible unless the Rules provide otherwise.  *Huddleston v.*

26

13

1   *U.S.,* 485 U.S. 681, 687, 108 S.Ct 1496, 1500 (1988).  In this instance, the testimony of Detective

2   Mesinar about petitioner's attitudes and behaviors at the time of his initial questioning was directly

3   relevant to petitioner's knowledge of his mother's death and his concern for her welfare or for the

4   fact of her demise.  Counsel had no basis to object and his failure to do so was not ineffective

5   representation.

6           (F)        Counsel Failed to Move to Suppress Evidence Seized from His Home, Which
                        He Shared with Hisayo Miller.

7

8   Petitioner claims that counsel was ineffective for failing to move to suppress evidence

9   that was seized from his home, the residence he shared with the deceased, Hisayo Miller.  He

10   contends that the police had no right to enter the premises without a warrant where there was nothing

11   to suggest an emergency existed.  This is especially true, petitioner asserts, given that the police did

12   not break down the door to gain entry, but instead obtained the services of a locksmith to open the

13   locked door.

14   According to the trial testimony, Ms. Miller's co-workers were concerned when she

15   did not come in to work or call about her absence for two days and called police to her residence

16   where her unlocked vehicle was found in the parking lot, the garage door was unlocked (or perhaps

17   even open), but no one answered the door at the home.  Exhibit 75, p. 110-112.  Given the co-

18   workers' and friends' concerns, police decided it was necessary to check Ms. Miller's welfare, but

19   rather than break down the door, called a locksmith to open the deadbolt.  When questioned at trial,

20   the police officer who was initiated the welfare check testified that after entering the residence he did

21   not detect any unusual smells, such as would suggest foul play.  *Id.*

22   The United States Supreme Court has determined that the Fourth Amendment

23   generally requires a search warrant, but that a warrantless search may be permitted if it is reasonable,

24   such as when " 'the exigencies of the situation' make the needs of law enforcement so compelling

25   that [a] warrantless search is objective reasonable under the Fourth Amendment."  *Kentucky v. King*,

26

1   ___ U.S. ___, 131 S.Ct. 1849, 1856 (2011) quoting *Mincey v. Arizona,* 437 U.S. 385, 394, 98 S.Ct.

2   2408 (1978).  A need for emergency aid will allow officers to enter a home without a warrant to

3   render emergency assistance to an injured occupant or to protect an occupant from imminent harm.

4   *Id.*; *see also, Brigham City, Utah v. Stuart,* 547 U.S. 398, 403, 126 S.Ct. 1943 (2006); *Michigan v.*

5   *Fisher,* 558 U.S. ___, ___, 130 S.Ct. 546, 548 (2009).  Moreover, "[a]n action is 'reasonable' under

6   the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the

7   circumstances, viewed *objectively,* justify [the] action.'" *Brigham City,* 547 U.S. at 404, 126 S.Ct., at

8   1948, quoting *Scott v. United States,* 436 U.S. 128, 138, 98 S.Ct. 1717 (1978) (emphasis in original).

9          Here, the officers were called to the residence by friends or co-workers of the murder

10   victim when she uncharacteristically failed to come to work and did not call to say she would be

11   absent for at least two days.  The co-workers were concerned for her welfare.  Exhibit 75, pp. 83-

12   103.  Furthermore, upon arrival at the residence, police found the woman's unlocked vehicle and

13   unlocked garage door, but could not raise a response to their knocks at the front door.  These factors

14   raised an objectively reasonable need to gain entry into the residence to ensue the welfare of Ms.

15   Miller.  Finally, when entry was gained, the warrantless search of the residence was strictly limited to

16   an attempt to locate Ms. Miller within the residence.  Once her body was found in the master

17   bathroom, the officers exited the residence and pursued a search warrant before re-entry and a more

18   thorough forensic search was had.  Exhibit 75, p. 117.

19          The Nevada Supreme Court denied petitioner claim that counsel was ineffective for

20   not moving to suppress the evidence because the circumstances "indicated that Miller may have been

21   injured or in need of medical assistance" citing to *Mincey v.Arizona,* 437 U.S. 385, 392 (1978) and

22   *Brigham City, Utah v. Stuart, supra.*  The court's review of the facts justifying this determination

23   was reasonable based on the evidence presented at trial.  As to the search of petitioner's vehicle, the

24   court concluded that the vehicle was included in the telephone search warrant application made for

25   the residence and that petitioner was a suspect in the disappearance of Miller even before he arrived

26

1   on the scene.  Because the search was not unreasonable under United States Supreme Court

2   precedent, the Nevada Supreme Court's determination that counsel was not ineffective in failing to

3   move to suppress the evidence was not an objectively unreasonable application of law or

4   determination of facts.

5           (G)   Counsel Failed to Obtain Messick's Consent to Argue and Ineffectively
                    Argued in Closing That, If Anything, Messick Was Guilty of Being an

6                       Accessory after the Fact to Miller's Murder.

7         During jury instruction settlement, counsel argued for the inclusion of an instruction

8   on accessory after the fact, contending that it was actually Dan Massey who committed the killings,

9   but that the evidence suggested that petitioner was involved in the efforts to coverup the killing.

10   Exhibit 78, p. 92-93.  At the close of evidence, counsel argued:

11           They have evidence of Mr. Messick cleaning up, and that and therein
        lies the State's case.  They have these different witnesses that have Mr.

12           Messick cleaning up.  Well, folks, so what?  He was cleaning up.  He's
        guilty of helping somebody after the fact clean up.  Does that directly

13           draw a parallel to being the person who cause harm?

14   Exhibit 78, p. 129.  This argument, petitioner contends, deprived him of the effective assistance of

15   counsel and of his right to an adversarial trial on the charges.  He argues that the Nevada Supreme

16   Court's denial of the claim was an unreasonable determination of the prejudice prong of the

17   *Strickland* ineffective assistance of counsel test. *See* Exhibit 128, p. 7.  He further argues that failure

18   by the court to determine the performance prong of the *Strickland* test makes the decision one that

19   was not adjudicated on the merits under *Harrington v. Richter,* 131 S.Ct. 770, 784 (2011) and *Cullen*

20   *v. Pinholster,* 131 S.Ct. 1388 (2011), because the 2254(d) standard of review does not apply when

21   "the state court rejection rested on only one of several related federal grounds."

22         This argument is misplaced where the Nevada Supreme Court's decision was clearly

23   based on the single federal ground of ineffective assistance of counsel, even where the court did not

24   address both prongs of the *Strickland* test.  In *Strickland* the Court said:

25           Although we have discussed the performance component of an
        ineffectiveness claim prior to the prejudice component, there is no

26

1

2

3

4

5

6

> reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

7  *Strickland,* 466 U.S. at 697.  The state court's determination was not unreasonable under 2254(d)

8  because the evidence presented against petitioner at trial was sufficient to convict, in spite of

9  counsel's arguments.

10                    (H)      Counsel Failed to Offer Expert Testimony to Refute Blood Evidence
                              Introduced at Trial.

11

12          Petitioner believes counsel was ineffective when the defense did not offer expert

13  testimony to refute blood evidence introduced against him.  He suggests that counsel could have

14  offered expert testimony that challenged the age of the spot of Ms. Miller's blood found in

15  petitioner's car, since Ms. Miller had previously been a passenger in his car "from time to time."

16          The question before ths Court is whether an attorney's representation amounted to

17  incompetence under "prevailing professional norms," not whether it deviated from best practices or

18  most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.  *Strickland* permits counsel to

19  "make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 691, 104

20  S.Ct. 2052. It is arguable that a reasonable attorney could decide to forgo inquiry into the blood

21  evidence in some circumstances. *Harrington v. Richter,*  131 S.Ct. at 788.

22          Here, the identity of the sources of the blood evidence was not subject to challenge

23  and the amount of blood tested was not significant. Moreover, there is no certainty that a DNA

24  expert would have had information favorable to the defense to offer at trial.  As the United States

25  Supreme Court said in *Harrington,* "An attorney need not pursue an investigation that would be

26

1    fruitless, much less one that may be harmful to the defense." *Id.* at 790.

2          The Nevada Supreme Court denied this claim on the basis that petitioner was unable

3    to show prejudice from counsel's performance, because petitioner had not identified what a blood

4    expert would have testified to that would have altered the outcome of his trial.  Exhibit 128, p.6.

5    Petitioner has not demonstrated to this Court that the decision was wrong within the strictures of §

6    2254(d).

7                      (I)      Counsel Failed to Object to Judicial Bias.

8          Petitioner argues that counsel should have objected to judicial bias where the judge

9    hurried counsel through his list of witnesses; the court granted only a handful of defense objections,

10   sidebar discussions were not recorded so as to preserve any record of the discussions and decisions

11   had therein, and the court refused defense counsel's request for a telephone number for a particular

12   defense witness, making it difficult or impossible for counsel to contact the witness prior to trial.

13         The Due Process Clause requires a "fair trial in a fair tribunal," before a judge with no

14   actual bias against the defendant or interest in the outcome of his particular case.  *Bracy v. Gramley,*

15   520 U.S. 899, 905, 117 S.Ct. 1793, 1798 (1997) quoting *Withrow v. Larkin*, 421 U.S. 35, 46, 95

16   S.Ct. 1456, 1464 (1975); *see, e.g., Aetna Life Ins. Co. V. Lavoie,* 475 U.S. 813, 821-822, 106

17   S.Ct.,1580, 1585-1586 (1986); *Tumey v. Ohio*, 273 U.S. 510, 523, 47 S.Ct. 437, 441 (1927).

18         Petitioner's contention that the events or circumstances he identifies evidences

19   judicial bias are unpersuasive.  According to the transcripts of the trial, it appeared that the judge was

20   attempting to manage the courtroom and its resources appropriately, particularly when the defense

21   was seeking to present three separate witnesses focused solely on discrediting a single, somewhat

22   tangential witness (Phillip Done) and when he sought to bring in a witness to testify generally about

23   framing hammers, and another witness who would testify about Ms. Miller's common practices in

24   handling her laundry.  Exhibit 78, pp. 70-74.  While cautioning the attorney to ensure the testimony

25   did not become too irrelevant, the court did not limit the witnesses.  *Id.*  As to the number of

26

                                                      18

objections that were sustained for the defense, petitioner has not identified any particular objections which were clearly improperly denied and the court's refusal to require the state to give a phone number for a witness who had objected to its release does not seem unreasonable to this Court. Counsel had an investigator who, presumably, could have taken steps to locate and speak with the witness through the skills and resources common to that occupation.  These examples do not demonstrate actual bias on the part of the judge.  *See United States v. Mostella,* 802 F.2d 358, 361 (9th Cir. 1986).

The Nevada Supreme Court denied this claim of ineffective assistance of counsel where it concluded that the judge had not demonstrated bias or a preconception of his guilt, but was "attempting to make correct rulings in a properly expeditious manner."  Exhibit 128, p. 12.  The conclusions of the court were not contrary to clearly established federal law and its determination of the facts was not objectively unreasonable.

Petitioner has not shown that he is entitled to relief on his claims of ineffective assistance of counsel when considered within the constraints of the AEDPA and specifically those in 28 U.S.C. § 2254(d).

Ground Six

> Messick was denied his right to the effective assistance of appellate counsel on appeal in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

In this ground, petitioner claims that his appellate counsel should have argued on direct appeal that the untimely release to the defense of a blood splatter expert's report violated petitioner's rights to a fair trial. The report was produced on Wednesday before trial starting on the following Tuesday and produced to the defense the Friday before trial.  Petitioner contends that the report was the first time it was disclosed that the blood spatter evidence included blood on a pair of jeans which likely belonged to petitioner. This short notice denied petitioner an opportunity to prepare a defense to this new evidence.  The trial court denied petitioner's motion to exclude the

evidence.  Exhibit 68, pp. 6-8.  Petitioner argues that counsel's failure to bring this meritorious claim could not have been tactical and that the missing claim brought counsel's representation below the minimal constitutionally required standards.

Effective assistance of appellate counsel is guaranteed by the Due Process Clause of the Fourteenth Amendment.  *Evitts v. Lucey*, 469 U.S. 387, 391-405 (1985).  Claims of ineffective assistance of appellate counsel are reviewed according to *Strickland's* two-pronged test.  *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir.1989)*; United States v. Birtle*, 792 F.2d 846, 847 (9th Cir.1986); *See, also, Penson v. Ohio*, 488 U.S. 75 (1988) (holding that where a defendant has been actually or constructively denied the assistance of appellate counsel altogether, the *Strickland* standard does not apply and prejudice is presumed; the implication is that *Strickland* does apply where counsel is present but ineffective).  Under this standard, petitioner must show that his appellate counsel's performance was objectively unreasonable in failing to identify and bring the claim and that there was a reasonable probability that, but for counsel's unreasonable failure, he would have prevailed on his appeal.  *Smith v. Robbins,* 528 U.S. 259, 285 (2000).

Due process is violated when the prosecution fails to make available evidence that is favorable to the defendant. *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196 (1963).  The prosecutor will not have violated his constitutional duty of disclosure unless his omission is of sufficient significance to result in the denial of the defendant's right to a fair trial. *U. S. v. Agurs,* 427 U.S. 97, 108, 96 S.Ct. 2392, 2400 (1976).  The timing of production of relevant and material information impacts a defendant's rights.  *United States v. Aichele,* 941 F.2d 761, 764 (9th Cir. 1991) citing *United States v. Gordon,* 844 F.2d 1397, 1403 (9th Cir. 1988) .

A review of the transcript of the oral motion to suppress or exclude the blood spatter evidence reveals that defense should have been aware that such evidence was available and would be introduced at trial, even if he did not know the extent of the evidence.  The defense was aware that included in the items taken from the scene of the murder was a pair of jeans which appeared to

belong to petitioner.  Being made aware of the blood on the jeans the weekend before trial, while

perhaps causing some slight disadvantage, did not preclude counsel from having an opportunity to

formulate a proper cross-examination of the witness who would testify as to these facts. *See Gordon,*

844 F.2d at 1403 (substantial opportunity to use information at trial cures any prejudice caused by

delayed disclosure.)  Moreover, a review of the examination of the blood spatter testimony reveals

that counsel was able to cross-examine the witness thoroughly and used the report for that purpose.

Exhibit 77, pp. 141-158.

This claim was presented to the Nevada Supreme Court on appeal from denial of the

post-conviction petition wherein the Nevada Supreme Court denied the claim stating:

> Counsel's supplemental petition argues that the report for the first time analyzed blood on a pair of jeans that were found in Miller's apartment.  We conclude that there was no reasonable probability that we would have decided Messick's direct appeal differently had appellate counsel raised this argument.  The blood spatter evidence, particularly as it pertained to the jeans, was relatively insignificant, and any error in admitting the report and allowing the expert to testify to its contents was harmless. [citation omitted.]

Exhibit 128, p. 5.

Where the court which would have reviewed the claim on direct appeal confirms that

it would not have viewed the trial or the outcome of the appeal differently if the claim had been

presented, this Court cannot conclude that the outcome of the appeal would have been different if the

claim had been presented, particularly having reviewed the transcripts of the proceedings.  It does

not appear that petitioner was prejudiced by the delayed release of the blood spatter report and,

where petitioner cannot show that the appeal would have had a different outcome if the missing

claim had been brought, there is no prejudice derived from appellate counsel's performance.  Ground

Six must be denied.

<u>Ground Nine</u>

> Messick is entitled to relief because of the cumulative effect of the errors raised on appeal to the Nevada Supreme Court and this Petition.

1          The Supreme Court has clearly established that the combined effect of multiple trial

2   court errors violates due process where it renders the resulting criminal trial fundamentally unfair.

3   *Chambers v. Mississippi*, 410 U.S. 284, 302-03, 93 S.Ct. 1038 (1973) (combined effect of individual

4   errors "denied [Chambers] a trial in accord with traditional and fundamental standards of due

5   process" and "deprived Chambers of a fair trial"). The cumulative effect of multiple errors can

6   violate due process even where no single error rises to the level of a constitutional violation or would

7   independently warrant reversal. *Id*. at 290 n. 3, 93 S.Ct. 1038.  The cumulative error doctrine,

8   however, does *not* permit the Court to consider the cumulative effect of *non-errors*.  *See Fuller v.*

9   *Roe*, 182 F.3d 699, 704 (9th Cir. 1999), *overruled on other grounds*, *Slack v. McDaniel*, 529 U.S.

10   473 (2000)("where there is no single constitutional error existing, nothing can accumulate to the

11   level of a constitutional violation").   No constitutionally significant errors have been found in these

12   proceedings.  Thus, Ground Nine is without merit and shall be denied under 28 U.S.C. § 2254(d).

13   **III.**     **Evidentiary Hearing Request**

14          Petitioner's request for an evidentiary hearing shall be denied where he offers no

15   specifics as to what evidence is available which was not available to the state court. Section

16   2254(e)(2) prohibits an evidentiary hearing to develop claims in federal court, unless the statute's

17   other stringent requirements are met. "Federal courts sitting in habeas are not an alternative forum

18   for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings."

19   *Williams v. Taylor,*  529 U.S. 420, 437, 120 S.Ct. 1479,1490 - 1491 (2000).

20   **IV.**     **Conclusion**

21          This petition is denied as petitioner has not borne his burden of demonstrating that the

22   state court's determination of his claims was improper under 28 U.S.C. § 2254(d).  In order to

23   proceed with an appeal from this Court, petitioner must receive a certificate of appealability.  28

24   U.S.C. § 2253(c)(1).  Generally, a petitioner must make "a substantial showing of the denial of a

25   constitutional right" to warrant a certificate of appealability.  *Id.*  The Supreme Court has held that a

26

petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Supreme Court further illuminated the standard for issuance of a certificate of appealability in *Miller-El v. Cockrell*, 537 U.S. 322 (2003). The Court stated in that case:

> We do not require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail. As we stated in *Slack*, "[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."

*Id.* at 1040 (quoting *Slack*, 529 U.S. at 484).

The Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appeal, and the Court determines that none meet that standard. Accordingly, the Court will deny petitioner a certificate of appealability.

**IT IS THEREFORE ORDERED** that the Motion for Leave to File Excess Pages (ECF No. 58) is **GRANTED.**

**IT IS FURTHER ORDERED** that the Motion to Strike Reply (ECF No. 60) is **DENIED.**

**IT IS FURTHER ORDERED** that the Second Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is **DENIED.** No Certificate of Appealability shall issue. The Clerk shall enter judgment accordingly.

Dated, this 19 day of September, 2011.

_____
UNITED STATES DISTRICT JUDGE

23